FILED

1  Mark D. Brutzkus – Bar No. 128102
   J. Alison Grabell - Bar No. 188953
2  Todd M. Lander - Bar No. 173031
   EZRA BRUTZKUS GUBNER LLP
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone: 818.827.9000
   Facsimile: 818.827.9099
5  Email:     mbrutzkus@ebg-law.com
              agrabell@ebg-law.com
6              tlander@ebg-law.com

2009 MAY -8 PM 2: 37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. O. CALIF.
LOS ANGELES

BY_____

7  Attorneys for Plaintiff HUDSON CLOTHING, LLC

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

HUDSON CLOTHING, LLC,                    Case No. CV09-3275

12           Plaintiff,

13                                       Complaint For:

14  v.                                   1. False Designation of Origin;
                                         2. Trade Dress Infringement;
15  BVDK DESIGN, INC., a California      3. False Advertising; and
    Corporation, and DAVID KAHN, an     4. Unfair Business Practices.
    individual,
16                                       DEMAND FOR JURY TRIAL
             Defendants.
17

18

19       Plaintiff Hudson Clothing, LLC ("Hudson"), alleges that:

20       1.    Hudson is a designer, manufacturer, marketer, distributor and seller of

21  men's and women's denim jeans, with its principal place of business in Commerce,

22  California. Hudson is the owner of a trademark comprised of a distinctive back

23  pocket flap design (the "Signature Pocket Flap") used on high end denim jeans the

24  company manufactures and distributes. It is also the owner of the attendant trade

25  dress encompassed within or associated with the Signature Pocket Flap (the

26  "Signature Pocket Trade Dress").

27  ///

28  ///

1        2.    Hudson is informed and believes, and on that basis alleges, that

2    defendant BVDK Design, Inc. ("BVDK") is likewise a designer, manufacturer and

3    distributor of denim jeans, organized and existing under the laws of the state of

4    California and maintaining a principal place of business in Los Angeles,

5    California.

6        3.    Hudson is informed and believes, and on that basis alleges, that

7    defendant David Kahn ("Kahn") is an individual residing in Los Angeles County

8    and is the principal and/or owner of BVDK.  Hudson is further informed and

9    believes, and on that basis alleges, that all or much of the conduct BVDK engaged

10   in and which is complained of below was taken as a result of decisions or

11   directives undertaken by Kahn.  In that regard, Hudson is additionally informed

12   and believes that Kahn's control of BVDK, financially and otherwise, is such that

13   there is no separate legal existence between Kahn and BVDK in law and fact, and

14   that Kahn and BVDK are, as a result, alter egos of the other as a matter of law.

15   BVDK and Kahn are occasionally referred to in this Complaint collectively as

16   "Defendants."

17       4.    At all times relevant to this dispute, the Defendants were the agents,

18   servants and/or employees of one another and in doing the things herein mentioned

19   and alleged was acting within the scope of such agency and/or employment.

20                      **JURISDICTION AND VENUE**

21       5.    This court has original subject matter jurisdiction over this action

22   pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121 and as this action arises

23   under The Federal Trademark Act ("The Lanham Act of 1946"), jurisdiction is

24   conferred upon this Court by 28 U.S.C. Sec. 1338(b).  Further, this court has

25   jurisdiction over the Hudson's pendent claims pursuant to 28 U.S.C. § 1367.

26       6.    Venue is proper in the Central District of California in that BVDK

27   maintains its principal place of business in this District and otherwise transacts

28   business affairs in the District.  In addition, the acts giving rise to the claim

1  involves BVDK's infringement of a trademark and/or trade dress that Hudson
2  owns, by way of sales of infringing goods and/or other infringing conducting
3  occurring entirely or primarily in this District.

4        7.     Personal jurisdiction exists over BVDK because BVDK maintains its
5  principal place of business in the Los Angeles area, otherwise derives substantial
6  revenue through activities in this State, and engages in a persistent course of
7  conduct in this State. The Court retains personal jurisdiction over Kahn because he
8  resides and works in this State. Furthermore, the subject claim arises from
9  BVDK's and Kahn's misconduct conduct within the State resulting in injury to
10 Hudson in California.

11 **FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**
12 **The Premium Denim Jeans Market And The Goods At Issue**

13       8.     Hudson and BVDK each design, manufacture, and distribute denim
14 jeans. The denim jeans market is highly competitive, and companies vying for a
15 share of it pride themselves on attaining a certain status and conveying a certain
16 cachet reflecting the style and quality of their jeans. Like most retail markets,
17 denim jeans encompass high, middle and low-end sub-markets, and a company's
18 success or failure in developing the desired status and cachet largely determines
19 where on the spectrum it will sit. Hudson and BVDK are at different levels on this
20 market scale.

21       9.     Hudson occupies the "premium" denim market, connoting jeans
22 commanding higher price points – Hudson's jeans, by way of example, normally
23 carry a price in excess of $150. This market attracts consumers focused on value,
24 style, fit and comfort. But it also caters to individuals craving something more
25 intangible but just as important: cachet and status, defined by the denim jean brand.
26 Although differences between styles, particularly pocket styles, may be overlooked
27 by consumers outside the premium market, these differences frequently define the
28 premium brands and are important decision-making factors to their customers.

1    10.    Hudson has, over the past several years, carved out a significant

2  national presence in the premium market.  And it has cultivated that market by

3  selling high quality jeans bearing the company's Signature Pocket Flap – and

4  carrying a $150-$200 price range – and by emphasizing sales to retailers that

5  emphasize that high-end market, such as Nordstrom.

6    11.    BVDK's jeans, in contrast, are of substantially lower quality and lack

7  the reputation for quality and style that Hudson's products enjoy.  But BVDK

8  aspires to the premium market nonetheless, and as alleged more fully below, has

9  mounted a campaign to draw on Hudson's success, status and goodwill as a

10  shortcut to entry into this market.  BVDK consciously adopted, used and is

11  continuing to use Hudson's distinctive Signature Pocket Flap on its own denim

12  jeans, and is selling those jeans to some of the same retail stores as Hudson,

13  including but not limited to Nordstrom.  And BVDK is promoting and pricing its

14  jeans comparably to Hudson's competing goods – though typically at a marginally

15  lower price point.

16    12.    This multi-pronged effort constitutes an infringement on Hudson's

17  rights in the Signature Pocket Flap and the Signature Pocket Trade Dress.  BVDK

18  is, simply put, trading off Hudson's reputation and good will, all in an effort to

19  confuse premium denim customers as to the source of origin of the parties'

20  respective products and realize a resulting windfall from sale of its own denim

21  jeans.  This effort has not only unjustly enriched BVDK, but has damaged Hudson.

22    **Plaintiff's Business, And The Origins And Success Of the Signature**

23    **Pocket Flap**

24    13.    Hudson produces numerous styles of denim jeans but is best known

25  for those jeans bearing the sought-after Signature Pocket Flap.  That mark dates to

26  at least as early as late 2002 or early 2003, when Hudson resolved to create an

27  identifiable back pocket flap for its five-pocket jean.  From there, Hudson

28  / / /

designed, created, adopted and began using the Signature Pocket Flap in connection with the sale of its denim jeans, a depiction of which is provided below.



14.    Hudson introduced the Signature Pocket Flap at various trade shows in early 2003, and the new design was an immediate success. Specialty retailers nationwide, including Nordstrom, placed orders at those shows for denim jeans bearing the Signature Pocket Flap. Those orders were shipped starting in or around April 2003 and, since then, the Signature Pocket Flap has been a durable presence within premium stores. Indeed, as recently as April 2009, Hudson jeans featuring the Signature Pocket Flap were advertised in the Nordstrom catalogue, the relevant pages of which are attached as Exhibit "A" to the Complaint.

15.    Starting with that 2003 introduction, Hudson has continually used the Signature Pocket Flap as a trademark and source identifier for its denim jeans in interstate commerce in the United States, both as a stand alone mark and in conjunction with the trademark HUDSON and/or other distinctive design elements distinguishing Hudson's jeans from the denim apparel of others. And through that continuous use, the Signature Pocket Flap has become the most prominent and valuable identifier of Hudson products. The sale of jeans bearing the Signature Pocket Flap account for approximately 70% of Hudson's gross annual revenue generated from denim jeans. Hudson's 2008 sales of Signature Pocket Flap jeans to Nordstrom alone totaled $14.0 million.

1    16.    Given that value, Hudson takes pains to protect its interest in the
2   Signature Pocket Flap through advertising and marketing efforts.  The company
3   attends, for example, at least thirteen major annual apparel industry trade shows,
4   including two Coterie and three Intermezzo shows in New York, two ENK shows
5   in Las Vegas, four Market shows in Dallas and four Market shows in Los Angeles.
6   It also employs diverse media to target its consumer demographic, including
7   advertising campaigns in national publications, the Internet, product placement and
8   direct mail sales catalogues.

9    17.    Hudson additionally maintains a showroom at the California Mart in
10  fashion district of Los Angeles, where numerous other designers and apparel
11  companies, including BVDK, likewise maintain showrooms.  Hudson's showroom
12  is open to its wholesale customers, their buyers, sales personnel and
13  representatives.  The showroom is also accessible to other tenants of the Mart.

14   18.    Hudson has taken further steps to protect its interest in the Signature
15  Pocket Flap.  On May 7, 2009, Hudson filed Application Serial Nos. 77732069 and
16  77732083 to register the Signature Pocket Flap at the United States Patent and
17  Trademark Office.  Copies of the USPTO TARR records are attached as Exhibit
18  "B" to the Complaint.

19  **The Discovery Of BVDK's Infringement Of The Signature Pocket Flap,**
20  **And BVDK's Refusal To Discontinue Its Infringement**

21   19.    As alleged above, BVDK – through Kahn, its owner and alter ego –
22  has engaged in a conscious and deliberate campaign to exploit the goodwill
23  associated with the Signature Pocket Flap for its own benefit, and as an illegal
24  means of facilitating its entry into the premium denim jeans market.  Hudson is
25  informed and believes, and on that basis alleges, that at least as early as January
26  2009 BVDK was manufacturing – or having manufactured – denim jeans bearing
27  the Signature Pocket Flap but without Hudson's knowledge or consent.
28  / / /

20.     Hudson became aware of this scheme in or around February 2009, when its personnel first discovered the BVDK jeans bearing the Signature Pocket Flap. Hudson immediately moved to stop this infringement. By way of letter dated February 20, 2009, it demanded that BVDK immediately cease and desist from any further use of Hudson's Signature Pocket Flap. The letter explained the history of the Signature Pocket Flap, the time and resources Hudson had devoted to its development, and the goodwill and secondary meaning the Signature Pocket Flap had developed and acquired in the marketplace. Hudson then advised BVDK that the use of Signature Pocket Flap was unauthorized, and insisted that it discontinue. A copy of Plaintiff's cease and desist letter is attached as Exhibit "C" to the Complaint.

21.     But BVDK refused to cease its conduct, despite this demand, and in fact expanded its unauthorized use of the Signature Pocket Flap in the wake of the February 20 letter. Specifically, BVDK attended the Coterie trade show in New York in late February 2009 – which began just days after Hudson sent the cease and desist letter – and prominently displayed at its booth jeans bearing the Signature Pocket Flap. Hudson personnel observed the infringing jeans firsthand, as did several other show attendees who independently reported their presence to Hudson. Lest there be any doubt as to the similarities between the Hudson and BVDK pocket designs, some of those attendees advised Hudson representatives that when they saw the jeans displayed at the BVDK booth, they initially believed

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1 | them to be Hudson products.  A depiction of the BVDK goods reveals the
2 | infringing nature of its design:



11      22.    After the Coterie show, Hudson began a broader investigation, and
12 | soon realized that BVDK was aggressively marketing the infringing jeans in
13 | various medium.  For example, the company's website – located at URL
14 | www.davidkahnjeanswear.com (the "BVDK Website") – carried depictions of
15 | denim jeans with the Signature Pocket Flap on one or more styles, including but
16 | not limited to the "Nikki" style.  Depictions of Defendants' jeans are attached
17 | hereto as Exhibit "D" to the Complaint.

18      23.    More alarming, it soon became apparent that BVDK was selling its
19 | infringing goods in the same channels of trade – namely Nordstrom – and to the
20 | same premium customers Hudson had cultivated since 2003.  That, coupled with
21 | the fact that BVDK's jeans carried a similar price point, led Hudson to the obvious
22 | conclusion that customer confusion concerning the source of origin of the parties'
23 | goods was not only likely, but was almost certain to result.  That inevitable
24 | confusion would work to BVDK's commercial benefit, and Hudson's detriment.

25      24.    The parties subsequently engaged in settlement discussions, but were
26 | unable to reach agreement.  Hudson is informed and believes, and on that basis
27 | alleges, that BVDK is continuing to sell goods bearing the Signature Pocket Flap.
28 | This lawsuit became necessary as a consequence.

## FIRST CLAIM FOR RELIEF

(False Designation of Origin Against All Defendants

15 U.S.C. § 1125(a) – Lanham Act §43(a))

25.    Hudson realleges and re-states, as though set forth in full, the allegations in paragraphs 1 through 24, above, inclusive.

26.    Hudson is, and at all relevant times was, the owner of all right, title and interest in and to the Signature Pocket Flap.  Since late 2002-early 2003, Hudson has been and still is the rightful manufacturer of denim jeans bearing the Signature Pocket Flap and has had and still has the exclusive right to use the Signature Pocket Flap and to sell denim jeans bearing the Signature Pocket Flap.

27.    Hudson's Signature Pocket Flap signifies to consumers that the denim jeans emanate from Hudson and are of the highest quality.  As a consequence of Hudson's consistent and continuous use of the Signature Pocket Flap throughout the United States, the consuming public and the trade have come to recognize and identify Hudson as the single source of denim jeans bearing, using or associated with the Signature Pocket Flap.  Hudson derives substantial good will and value from this identification.

28.    The Defendants have, as alleged above, sold and are continuing to sell to Nordstrom and others denim jeans bearing a back pocket flap that is identical or confusingly similar to Plaintiff's Signature Pocket Flap.  That conduct constitutes the use of symbols or devices tending falsely to describe Defendants' goods, within the meaning of 15 U.S.C. § 1125(a)(1), and is likely to cause confusion, mistake, or deception by the public concerning the source of origin as between Defendant's goods and those of Hudson, and/or to cause confusion, mistake, or deception as to the affiliation, connection, association, origin, sponsorship or approval of Defendants' goods with or by Hudson.

29.    Hudson is informed and believes, and on that basis alleges, that on and after February 20, 2009, Defendants sold and continue to sell denim jeans to

1  Nordstrom and others bearing a back pocket flap that is identical or confusingly
2  similar to Hudson's Signature Pocket Flap. Defendants continued those sales
3  despite Hudson's specifically advising them that this conduct infringed upon
4  Hudson's trademark rights in and to the Signature Pocket Flap.

5       30.   As a direct and proximate result of Defendants' infringing activities,
6  Hudson has suffered, and will continue to suffer until such activity is enjoined by
7  the Court, irreparable and inherently unquantifiable injury and harm to its business,
8  reputation, and consumer goodwill. Defendants' conduct has and will also cause
9  Hudson to lose sales which it would otherwise realize, unless and until such
10  activity is enjoined by the Court.

11       31.   Defendants' infringing activities are willful and conscious, and are
12  likely to cause injury to Hudson and the public. Hudson is entitled to recover its
13  actual damages and/or to disgorge any profits Defendants' received through their
14  infringing conduct, in addition to an award of costs and attorneys' fees under 15
15  U.S.C. §§ 1116 and 1117. Hudson is further entitled to a trebling of any award of
16  damages and/or profits, pursuant to 15 U.S.C. § 1117(a). Hudson is additionally
17  entitled to temporary, preliminary and/or permanent injunctive relief, a seizure of
18  all infringing goods under 15 U.S.C. §1116(d), and the impoundment and
19  destruction of all infringing goods pursuant to 15 U.S.C. § 1118.

20                       **SECOND CLAIM FOR RELIEF**
21             (Trade Dress Infringement Against All Defendants
22               15 U.S.C. § 1125(a) – Lanham Act §43(a))

23       32.   Hudson realleges and re-states, as though set forth in full, the
24  allegations in paragraphs 1 through 31, above, inclusive.

25       33.   Hudson is, and at all relevant times was, the owner of all right, title
26  and interest in and to the Signature Pocket Trade Dress. Since late 2002-early
27  2003, Hudson has been and still is the rightful manufacturer of denim jeans bearing
28  the Signature Pocket Trade Dress, and has had and still has the exclusive right to

1 | use the Signature Pocket Trade Dress and to sell denim jeans bearing that trade
2 | dress.

3 |     34.   Hudson's Signature Pocket Trade Dress signifies to consumers that
4 | the denim jeans emanate from Hudson and are of the highest quality.  As a
5 | consequence of Hudson's consistent and continuous use of the Signature Pocket
6 | Trade Dress throughout the United States, the consuming public and the trade have
7 | come to recognize and identify Hudson as the single source of denim jeans
8 | bearing, using or associated with the Signature Pocket Trade Dress.  Hudson
9 | derives substantial good will and value from this identification.

10 |     35.   The Defendants have, as alleged above, sold and are continuing to sell
11 | to Nordstrom and others denim jeans bearing a back pocket flap that is identical or
12 | confusingly similar to Plaintiff's Signature Pocket Trade Dress.  That conduct
13 | constitutes the use of symbols or devices tending falsely to describe Defendants'
14 | goods, within the meaning of 15 U.S.C. § 1125(a)(1), and is likely to cause
15 | confusion, mistake, or deception by the public concerning the source of origin as
16 | between Defendant's goods and those of Hudson, and/or to cause confusion,
17 | mistake, or deception as to the affiliation, connection, association, origin,
18 | sponsorship or approval of Defendants' goods with or by Hudson.

19 |     36.   Hudson is informed and believes, and on that basis alleges, that on
20 | and after February 20, 2009, Defendants sold and continue to sell denim jeans to
21 | Nordstrom and others bearing a back pocket flap that is identical or confusingly
22 | similar to Hudson's Signature Pocket Trade Dress.  Defendants continued those
23 | sales despite Hudson specifically advising them that this conduct infringed upon
24 | Hudson's trademark rights in and to the Signature Pocket Trade Dress.

25 |     37.   As a direct and proximate result of Defendants' infringing activities,
26 | Hudson has suffered, and will continue to suffer until such activity is enjoined by
27 | the Court, irreparable and inherently unquantifiable injury and harm to its business,
28 | reputation, and consumer goodwill.  Defendants' conduct has and will also cause

1  Hudson to lose sales which it would otherwise realize, unless and until such
2  activity is enjoined by the Court.

3      38.    Defendants' infringing activities are willful and conscious, and are
4  likely to cause injury to Hudson and the public.  Hudson is entitled to recover its
5  actual damages and/or to disgorge any profits Defendants' received through their
6  infringing conduct, in addition to an award of costs and attorneys' fees under 15
7  U.S.C. §§ 1116 and 1117.  Hudson is further entitled to a trebling of any award of
8  damages and/or profits, pursuant to 15 U.S.C. § 1117(a).  Hudson is additionally
9  entitled to temporary, preliminary and/or permanent injunctive relief, a seizure of
10 all infringing goods under 15 U.S.C. §1116(d), and the impoundment and
11 destruction of all infringing goods pursuant to 15 U.S.C. § 1118.

12                       **THIRD CLAIM FOR RELIEF**
13                    (False Advertising Against All Defendants
14                 15 U.S.C. § 1125(a)(1)(B) – Lanham Act §43(a))

15     39.    Hudson realleges and re-states, as though set forth in full, the
16 allegations in paragraphs 1 through 38, above, inclusive.

17     40.    Defendants' conduct as alleged above, and specifically their
18 unauthorized use of the Signature Pocket Flap and the Signature Pocket Trade
19 Dress in marketing and promoting their infringing goods and soliciting orders for
20 those goods from retailers such as Nordstrom, constitutes false and misleading
21 advertising or representations of facts concerning the nature, characteristics, or
22 qualities of their goods.  That false and misleading advertising is likely to cause
23 and is causing deception in the marketplace, and is likely to and is influencing
24 consumer purchasing decisions, and specifically decisions relating to the purchase
25 of Hudson's goods or Defendants' infringing goods.

26     41.    Defendants' conduct constitutes false advertising, in contravention of
27 15 U.S.C. § 1125(a)(1)(B).  Defendants' have engaged in this false advertising
28 ///

1   willfully and consciously, and in the face of Hudson's request that they cease and

2   desist.

3       42.    As a direct and proximate result of Defendants' false and misleading

4   advertising, Hudson is likely to be and has been injured by direct diversion of sales

5   from Hudson to Defendants and by a decline in the goodwill Hudson's products

6   presently enjoy with the public.

7       43.    As a further direct and proximate result of Defendants' misconduct,

8   Hudson has suffered, and will continue to suffer until such activity is enjoined by

9   the Court, irreparable and inherently unquantifiable injury and harm to its business,

10  reputation, and consumer goodwill.  Defendants' conduct has and will also cause

11  Hudson to lose sales which it would otherwise realize, unless and until such

12  activity is enjoined by the Court.

13      44.    Defendants' false advertising was willful and conscious, and is likely

14  to cause injury to Hudson and the public.  Hudson is entitled to recover its actual

15  damages and/or to disgorge any profits Defendants' received through their

16  infringing conduct, in addition to an award of costs and attorneys' fees under 15

17  U.S.C. §§ 1116 and 1117.  Hudson is further entitled to a trebling of any award of

18  damages and/or profits, pursuant to 15 U.S.C. § 1117(a).  Hudson is additionally

19  entitled to temporary, preliminary and/or permanent injunctive relief, a seizure of

20  all infringing goods under 15 U.S.C. §1116(d), and the impoundment and

21  destruction of all infringing goods pursuant to 15 U.S.C. § 1118.

22                    **FOURTH CLAIM FOR RELIEF**

23                    (Unfair Competition Under California Law

24              California Business & Professions Code § 17200, *et seq.*)

25      45.    Hudson realleges and re-states, as though set forth in full, the

26  allegations in paragraphs 1 through 44, inclusive.

27      46.    Hudson is the owner of the Signature Pocket Flap and the Signature

28  Pocket Trade Dress.  Defendants' infringement of the Signature Pocket Flap, the

1  Signature Pocket Trade Dress, and their false advertising, all as alleged above,

2  constitute unfair and/or fraudulent business practices and/or false and untrue

3  advertising within the meaning of California Business and Professions Code §

4  17200, *et seq.*

5      47.    As a consequence of Defendants' conduct, which was willful and

6  conscious, Hudson is entitled to injunctive relief and/or an order disgorging

7  Defendants' profits derived from the manufacture, use, display or sale of goods

8  infringing upon Hudson's rights in and to the Signature Pocket Flap and the

9  Signature Pocket Trade Dress.

10     WHEREFORE, Hudson prays for:

11  ## As To the First Claim For Relief

12     1.    Temporary, Preliminary and Permanent Injunctive Relief, prohibiting

13  Defendants from: (a) using the Signature Pocket Flap in commerce; (2) using any

14  other mark in commerce that is confusingly similar to the Signature Pocket Flap;

15  and/or (3) engaging in any conduct that is likely to cause confusion, mistake,

16  deception or public misunderstanding as to the origin of Defendants' products

17  and/or their connectedness to Hudson;

18     2.    A seizure order under 15 U.S.C. § 1116(d);

19     3.    An order impounding and destroying all infringing goods, under 15

20  U.S.C. § 1118;

21     4.    Restitution and Disgorgement of any profits Defendants generated

22  through the sales of their infringing goods;

23     5.    Treble damages under 15 U.S.C. § 1117(a);

24     6.    Actual damages, according to proof at trial;

25     7.    The costs of suit incurred, under 15 U.S.C. § 1116;

26     8.    Reasonable attorneys' fees, under 15 U.S.C. § 1117(a); and

27     9.    Such further relief as this Court deems just and appropriate;

28  / / /

## As To the Second Claim For Relief

10.     Temporary, Preliminary and Permanent Injunctive Relief, prohibiting Defendants from: (a) using the Signature Pocket Trade Dress in commerce; (2) using any other trade dress in commerce that is confusingly similar to the Signature Pocket Trade Dress; and/or (3) engaging in any conduct that is likely to confusion, mistake, deception or public misunderstanding as to the origin of Defendants' products and/or their connectedness to Hudson;

11.     A seizure order under 15 U.S.C. § 1116(d);

12.     An order impounding and destroying all infringing goods, under 15 U.S.C. § 1118;

13.     Restitution and Disgorgement of any profits Defendants generated through the sales of their infringing goods;

14.     Treble damages under 15 U.S.C. § 1117(a);

15.     Actual damages, according to proof at trial;

16.     The costs of suit incurred, under 15 U.S.C. § 1116;

17.     Reasonable attorneys' fees, under 15 U.S.C. § 1117(a); and

18.     Such further relief as this Court deems just and appropriate;

## As To the Third Claim For Relief

19.     Temporary, Preliminary and Permanent Injunctive Relief, prohibiting Defendants from: (a) engaging in any false advertising related to the Signature Pocket Flap and/or the Signature Pocket Trade Dress; (2) advertising any products in commerce bearing any trademark or trade dress that is confusingly similar to the Signature Pocket Flap or the Signature Pocket Trade Dress; and/or (3) engaging in any advertising that is likely to confusion, mistake, deception or public misunderstanding as to the origin of Defendants' products and/or their connectedness to Hudson;

///

///

1    20.    A seizure order under 15 U.S.C. § 1116(d);

2    21.    An order impounding and destroying all infringing goods, under 15

3    U.S.C. § 1118;

4    22.    Restitution and Disgorgement of any profits Defendants generated

5    through the sales of their infringing goods;

6    23.    Treble damages under 15 U.S.C. § 1117(a);

7    24.    Actual damages, according to proof at trial;

8    25.    The costs of suit incurred, under 15 U.S.C. § 1116;

9    26.    Reasonable attorneys' fees, under 15 U.S.C. § 1117(a); and

10   27.    Such further relief as this Court deems just and appropriate;

11                      **As To The Fourth Claim For Relief**

12   28.    Temporary, Preliminary and Permanent Injunctive Relief, prohibiting

13   Defendants from: (a) using the Signature Pocket Flap or the Signature Trade Dress

14   in commerce; (2) using any other mark or trade dress in commerce that is

15   confusingly similar to the Signature Pocket Flap or the Signature Pocket Trade

16   Dress; or (3) engaging in any conduct that is likely to confusion, mistake,

17   deception or public misunderstanding as to the origin of Defendants' products

18   and/or their connectedness to Hudson;

19   29.    General damages as permitted by law and in an amount to be proven

20   at trial;

21   30.    Special damages, according to proof;

22   31.    The imposition of a constructive trust requiring that any profits or

23   gains realized through the Defendants' Unfair Business Practices be held in

24   constructive trust for the sole and exclusive benefit of Hudson;

25   32.    The costs of suit incurred; and

26   33.    Such further relief as this Court deems just and appropriate.

27   ///

28   ///

1

## **DEMAND FOR JURY TRIAL**

2

Hudson Clothing, LLC hereby demands a trial by jury.

3

4      Dated:  May 8, 2009                                    EZRA BRUTZKUS GUBNER LLP

5

6                                                                          By: _____

7                                                                                   Mark D. Brutzkus
                                                                                     J. Alison Grabell
8                                                                                   Todd M. Lander
                                                                                     Attorneys for Plaintiff,
9                                                                                   HUDSON CLOTHING, LLC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT